## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## LOUISVILLE DIVISION

| | | |
|---|---|---|
| **CHIEKH DIAKHATE** | : | **Case No:** 3:23-cv-345-DJH |
| 615 Hobbs Lane | : | |
| Fisherville, KY 40023 | : | **Judge:** |
| | : | |
| PLAINTIFF, | : | |
| | : | |
| -VS- | : | |
| | : | |
| **SKYBRIDGE RESOURCES, LLC** | : | |
| c/o George Cronen | : | |
| 9960 Corporate Campus Drive, Suite | : | |
| 1050 Louisville, KY 40223 | : | |
| | : | |
| and, | : | |
| | : | |
| **KINDRED HEALTHCARE, LLC** | : | |
| c/o CT Corporation System | : | |
| 306 W Main St. Suite 512 | : | |
| Frankfort, KY 40601 | : | |
| | : | |
| | : | |
| DEFENDANTS. | | |

---

### COMPLAINT WITH JURY DEMAND

---

Chiekh Diakhate states the following for his Complaint against Skybridge Resources LLC and Kindred Healthcare, LLC:

### <u>INTRODUCTION</u>

1.     This action arose after Skybridge Resources LLC and Kindred Healthcare, LLC engaged in discriminatory employment practices against an employee who worked for the company without incident for nearly 10 years until he complained about racial

discrimination. In fact, within hours of complaining of racial discrimination, Defendants terminated Mr. Diakhate.

## PARTIES

2.     Plaintiff Chiekh Diakhate ("Mr. Diakhate" or "Plaintiff") is a resident of Jefferson County Kentucky. Plaintiff's claims arose out of an employment relationship with Skybridge Resources LLC and Kindred Healthcare, LLC.

3.     Skybridge Resources LLC ("Defendant") or ("Skybridge") is a corporation registered with the Kentucky Secretary of State doing business in Jefferson County, Kentucky.  Skybridge is a staffing agency.

4.     Kindred Healthcare, LLC ("Defendant") or ("Kindred") is a corporation registered with the Kentucky Secretary of State doing business in Jefferson County, Kentucky.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction to hear this case under 28 U.S.C. § 1331 because Mr. Diakhate asserts claims arising under the Civil Rights Act of 1866, 42 U.S.C. § 1981(a).

6.     Mr. Diakhate also states claims under the laws of the Commonwealth of Kentucky. These claims are inherently related to the other claims in this case, over which this Court has original jurisdiction, that they are a part of the same case or controversy under Article III of the United States Constitution.  Accordingly, this Court has supplemental jurisdiction of these claims under 28 U.S.C. § 1367.

7.     Venue is proper in this Court because the transactions and occurrences occurred in Louisville, Kentucky.

8.    Plaintiff has timely filed this action and has complied with all administrative prerequisites to bring this lawsuit.

**BACKGROUND FACTS**

9.    Mr. Diakhate is an American citizen from Senegal, West Africa.

10.   Mr. Diakhate speaks with an accent.

11.   Upon information and belief, both Defendants had the ability to hire or fire Mr. Diakhate.

12.   Both Defendants controlled Mr. Diakhate's work schedule and the conditions of his employment.

13.   Upon information and belief, both Defendants had the ability to determine Mr. Diakhate's rate of pay.

14.   Both Defendants had the ability to reprimand Mr. Diakhate.

15.   Both Defendants had the ability to promote Mr. Diakhate.

16.   Mr. Diakhate reported to both Skybridge and Kindred managers.

17.   Mr. Diakhate was qualified for his position and adequately performed all his job duties.

18.   Mr. Diakhate worked for Skybridge and Kindred for years without incident until he complained of race and national origin discrimination.

19.   Defendant treated Mr. Diakhate differently than his non-minority counterparts.

20.   For example, Defendants gave Mr. Diakhate a significantly larger workload than his non-minority counterparts.

21.     Upon information and belief, Mr. Diakhate had the largest workload out of everyone in his department.

22.     Likewise, Defendant did not give Mr. Diakhate the opportunity to apply or interview for multiple positions that he was qualified for.

23.     Instead, Defendant elected to give the position to a non-minority colleague who had significantly less experience and fewer certifications than him.

24.     Defendant constantly reprimanded Mr. Diakhate for things his other non-minority counterparts did not get reprimanded for.

25.     Mr. Diakhate's manager constantly verbally accosted him and scrutinized Mr. Diakhate.

26.     Mr. Diakhate's manager did not treat non-minority employees this way.

27.     Mr. Diakhate reasonably believed that his manager was causing a hostile work environment based on his race.

28.     Mr. Diakhate's coworkers even mentioned that his manager was treating him differently than the rest of the department.

29.     After months of severe and pervasive treatment, Mr. Diakhate complained to his superiors and HR that Skybridge and Kindred were treating him differently than his non-minority co-workers.

30.     This complaint was met with immediate hostility and Mr. Diakhate's manager ramped up her hostile treatment towards him.

31.     Despite his complaints, Defendants continued to treat Mr. Diakhate unfairly and reprimand him.

32.     In fact, Mr. Diakhate's manager reprimanded him because of a "communication" problem.

33.    Mr. Diakhate believes this reprimand was because of his accent.

34.    Mr. Diakhate complained to HR that he was reprimanded because of his accent.

35.    Likewise, Mr. Diakhate complained to his superiors and HR that Skybridge and Kindred reprimanded him for things that his non-minority counterparts did not get reprimanded for.

36.    Within hours of this complaint, Defendants terminated Mr. Diakhate.

37.    Thus, Defendants terminated Mr. Diakhate within hours of him complaining of race and national origin discrimination.

38.    Defendants' reasons for terminating Mr. Diakhate were bogus.

39.    Defendants treated Mr. Diakhate differently than other non-minority employees.

40.    Mr. Diakhate has suffered damages and will continue to suffer damages in the future because of Defendants actions.

## CLAIMS

### COUNT I
### Racial Discrimination Under KRS §344.

41.    Mr. Diakhate restates and incorporates all paragraphs.

42.    Mr. Diakhate is American citizen from Senegal, West Africa.

43.    Mr. Diakhate was always qualified for his position.

44.    Defendant's conduct created a hostile work environment based on Mr. Diakhate's race.

45.    Defendant fosters a culture of racism.

46.     Defendant treated Mr. Diakhate differently than his non-minority counterparts.

47.     Defendant terminated Mr. Diakhate because of his race.

48.     Defendant's alleged reason for termination is bogus.

49.     Defendant terminated Mr. Diakhate because he complained about racial discrimination and national origin discrimination and retaliation.

50.     Mr. Diakhate complained to Defendant's HR and his supervisor regarding discrimination and no actions were taken.

51.     Mr. Diakhate was required to endure Defendant's racist culture.

52.     Mr. Diakhate suffered emotional distress due to the severe nature of the hostile work environment.

53.     Defendant took no prompt remedial action to prevent Defendant's known racially insensitive conduct.

54.     Defendant's actions were severe and pervasive.

55.     Defendant's actions were willful and in a conscious disregard of the rights of Mr. Diakhate.

56.     As a direct and proximate result of the discrimination, Mr. Diakhate has sustained, and will continue to sustain, economic, and emotional injuries.

57.     Mr. Diakhate is entitled to all damages and injunctive relief permissible under KRS §344.

58.     As a result of Defendant's actions, Mr. Diakhate has been harmed.

## COUNT II
## Retaliation Under KRS §344

59.     Mr. Diakhate restates and incorporates all paragraphs.

60.     Mr. Diakhate was qualified for his position.

61.     Mr. Diakhate made informal and formal complaints to Defendant's agents and employees opposing Defendant's unlawful discriminatory employment practices based on his national origin and race.

62.     Mr. Diakhate complained to his superiors and HR that Defendant treated him differently than his non-minority co-workers.

63.     Mr. Diakhate complained to his superiors and HR that Defendant reprimanded him because of his accent.

64.     Defendant terminated Mr. Diakhate within hours of him complaining of race and national origin discrimination of Skybridge and Kindred.

65.     Mr. Diakhate held a reasonable and good faith belief that Defendant's behavior constituted national origin discrimination, racial discrimination.

66.     As a result of Mr. Diakhate's complaints, Defendant's agents and employees took materially adverse actions against him, including significantly increasing his workload, unfair treatment, and reprimands by his supervisors.

67.     Defendant's adverse actions constituted retaliatory workplace harassment.

68.     Within weeks of complaining about racial, national origin discrimination, and retaliation, Defendant terminated Mr. Diakhate.

69.     Mr. Diakhate was humiliated, economically damaged, and suffered emotional distress.

70.     Defendants' actions were willful and in a conscious disregard of the rights of Mr. Diakhate.

71.     As a direct and proximate result of the discrimination, Mr. Diakhate has sustained, and will continue to sustain, economic, and emotional injuries.

72.     Mr. Diakhate is entitled to all damages and injunctive relief permissible under KRS §344.

73.     As a result of Defendant's actions, Mr. Diakhate has been harmed.


## COUNT III
### National Origin Discrimination Under KRS §344

74.     Mr. Diakhate restates and incorporates all paragraphs.

75.     KRS §344 prohibits employment practices that discriminate against persons based on their national origin.

76.     Mr. Diakhate is from Senegal, West Africa.

77.     Defendant would treat Mr. Diakhate differently than his non-minority counterparts.

78.     Defendant would treat Mr. Diakhate harshly and unfairly.

79.     Defendants' actions were willful and in a conscious disregard of the rights of Mr. Diakhate.

80.     As a direct and proximate result of the discrimination, Mr. Diakhate has sustained, and will continue to sustain, economic, and emotional injuries.

81.     Mr. Diakhate is entitled to all damages and injunctive relief permissible under KRS §344.

82.     As a result of Defendant's actions, Mr. Diakhate has been harmed.

## COUNT IV
### Race Discrimination Under 42 U.S.C. § 1981

83.     Mr. Diakhate restates and incorporates all paragraphs.

84.     Mr. Diakhate is an African American male.

85.    Section 1981 protects individuals from discriminatory treatment by granting all persons the right to make and enforce contracts regardless of race.

86.    As the relationship between an employer and its employees is considered "contractual" (even with at-will employment), Section 1981 applies to the employment relationship.

87.    Mr. Diakhate was at all times qualified for his position.

88.    Defendants' conduct created a hostile work environment based on Mr. Diakhate's race.

89.    In fact, Mr. Diakhate's manager treated him negatively, but treated the other non-African-American employees differently.

90.    Likewise, Mr. Diakhate complained to Defendants regarding racially insensitive comments and no actions were taken.

91.    Defendants' comments and actions would be intimidating, hostile, or offensive to reasonable people.

92.    Mr. Diakhate was required to endure Defendants' racist culture as a term and condition of his employment.

93.    Mr. Diakhate suffered emotional distress due to the severe nature of the hostile work environment.

94.    Defendants took no prompt remedial action to prevent Defendants' known racially insensitive conduct.

95.    Defendant terminated Mr. Diakhate because of his race.

96.    Defendants' actions were willful and in a conscious disregard of the rights of Mr. Diakhate.

97.     As a direct and proximate result of the discrimination, Mr. Diakhate has sustained, and will continue to sustain, economic, and emotional injuries.

98.     Mr. Diakhate is entitled to all damages and injunctive relief permissible under § 1981.

99.     As a result of Defendants' actions, Mr. Diakhate has been harmed.

**WHEREFORE**, Mr. Diakhate respectfully requests that this Court find for him and award him the following:

a. Compensatory damages.

b. Reinstatement;

c. Lost wages and all other compensation denied or lost to Plaintiff by reason of Defendant's unlawful actions;

d. Statutory damages;

e. Interest;

f. Punitive damages;

g. Attorney fees;

h. Costs;

i. Litigation expenses; and

j. All other relief this Court deems proper.

Respectfully Submitted,

**/s/ Robert L. Thompson**
Robert L. Thompson (KY: 98791)
THOMPSON LEGAL LLC
10529 Timberwood Circle, Unit B
Louisville, Kentucky 40223
P: 502-366-2121
F: 502-438-9999
Robert@RthompsonLegal.com